May it please the Court, my name is Kevin Kelvill, I represent the Appellant, Talia Bilyeu. There s a lot of issues that have been raised in the briefs going back and forth, but I think there s one threshold issue that has to be addressed before we can get to all the others, and that is whether Ms. Bilyeu is entitled to continued benefits, because if you find that she is, then the claim of ill-gotten gains on the counterclaim has to go away, and so does the overpayment claims, because if you find that she is, then the  claim of ill-gotten gains on the counterclaim has to go away, and so does the claim of ill-gotten gains on the counterclaim has to go away. And there s three parts to the determination as to whether she is entitled to benefits. The first part is we look at only the reason they gave for terminating her benefits, which was the mental illness limitation, and then we look at Patterson, because that informed the mental illness limitation in this case, and then we look to see if there is a physical component to her disability, and if it turns out that s true, then that s really the end of the analysis. Now, with respect to the mental illness limitation, that s the only reason on review, because that s the only reason they gave. There s the case law in that we cited a body in the briefs, but there s two other cases. It s Harlech v. Blue Shield and Mitchell v. C. D. Ellis say the same thing. They have to give a specific reason for termination during the administrative process, otherwise those reasons escape review, and mental illness is the only one they gave. Counsel, I won t speak for my colleagues. I would really like you to go to that third thing, which is the physical component to her disability, because it looks like Judge Bolton tried this case on the record and went through it pretty thoroughly. So where did Judge Bolton make a mistake? Judge Bolton made two mistakes. I don t believe she applied it at noble review. I think ultimately she deferred and attended the conclusion of her ruling, that summary judgment. She deferred to the fact that she said their application of the mental illness limitation was reasonable, and that wasn t her job, because it was noble review. She was supposed to examine the facts independently. And then later, when she was making findings of fact after the bench trial, she reached a conclusion, and this is in ER 186 at page 2, lines 15 to 17. Plaintiff stopped working for Discover in April 2004 because her Bichette syndrome was exacerbated by a hostile work environment. So she concluded she stopped working because of Bichette. Bichette is an autoimmune condition. That s a physical disability. So I don t know how you can reconcile that finding with the fact that with Patterson, because Patterson says if there s a physical component, you don t get to apply this particular mental illness limitation. And in addition to that, there s I won t say oodles, it s an imprecise term, but in the claim file, there s multiple references to her co-morbid physical and mental conditions. And most of those, if not all of them, are cited in the statement of facts and summary judgments at ER 156. But isn t that the role of the district judge that if the facts are maybe disputed, she makes findings de novo. She can believe or credit certain testimony more heavily than others. That s the whole nature of it. That s correct. So she made a decision, and while she said initially she was going to use the summary judgment standard, she in effect I think did decide it on the administrative record. Now, she did not talk about the Social Security decision. And I didn t know whether that s critical to you or not. And she used this term objective medical evidence too, which is not supposed to be done. The Social Security is critical. I ll get to that in a moment. But ER 178 is her ruling on summary judgment. The introduction to that ruling is I m going to consider plaintiff s motion for summary judgment on the benefits claim and Unum s motion on the counterclaim to the administrative record. Right. And when she gets to the end of that, she says, I m denying plaintiff s motion for summary judgment, but there are questions of fact, so I can t decide the counterclaims. So we re going to have a bench trial on the counterclaims. There are no findings of fact made in the ruling on summary judgment. So plainly that when she was not making findings of fact, she had to have found that there was no question of fact. And I believe in summary judgment that was error here because I think there plainly is a question of fact. Well, I think if the standard were summary judgment, obviously that would be true because there were conflicting testimony to some extent. But if she did decide it on the administrative record, she had a right to do that, didn t she? Correct. And Ms. Blue had a right to address those issues under that standard. We had a bench trial only on the counterclaims. And if she thought there was a question of fact on Blue s claim, that should have been articulated and we should have had an opportunity to argue those facts at the bench trial. We didn t have that opportunity. Well, it s really not a bench trial. It s an appeal on the administrative record. No. Because you know her views. I know. But you don t have a trial. You don t put witnesses on before the district judge. She bases her decision on the record. Correct. But we submitted additional trial briefs and we argued the issues again. And because the standard when we filed the motion for summary judgment was we could all, you know, if they wanted to if she wanted to rule in favor of Unum on our claim, all the evidence should have been drawn in our favor. So we had that going for us. On a bench trial, even if it s on trial memos, we don t have that advantage and we should have been given the opportunity to make a further argument about why the facts compelled the conclusion that she has a physical ailment. And I think the facts support that. So even if it was a factual finding, I think it was clearly erroneous. So you re saying your briefs in the lower court, in the district court, were couched in terms of summary judgment? On the benefits claim, correct. On the benefits claim. So you kept saying there were genuine disputes of material fact. I said there were none. I thought there was an undisputed fact. Because you thought you should win. But in any event, they weren t undisputed material facts in favor of Unum. Correct. Obviously, if we thought the facts were in our favor, they couldn t be in Unum s favor. That is correct. Judge Bibas, you were going to ask me a question? I have a question. On this limitation that the insurer invoked, who had the burden of proving that your client had the physical component. Ms. Blue has the burden of proving that she had that disability benefits. Correct. And your claim, then, is the record that was before the court contained sufficient evidence, but you weren t allowed at the bench trial portion to supplement or to highlight the arguments as to why there was a physical component? The benefit decision never got to the bench trial stage. That was decided in an earlier ruling on summary judgment. And the evidence of her disability is fairly compelling. As I said before, there s all those references to her comorbid conditions in the claim file. She suffers from fibromyalgia, Irritable Bowel Syndrome, BESHFT, which is an autoimmune condition, endometriosis. All her treating doctors say she s got a physical component. Her mental health provider says that s the physical condition that s causing her anxiety and depression. Dr. Profak said she s restricted due to combined physical and mental. The Social Security Administration says she s got less than sedentary capacity, and that s based solely on physical. They looked at the mental components and said, that doesn t get you the disability in the Social Security Administration, but when you combine it with the physical, you do. Right, but once you combine it with the physical, the Social Security Administration is going to do what the Social Security Administration does. But that wouldn t qualify you under the plan. It does under Patterson because the plan is ambiguous. The plan doesn t say there has to be exclusively mental. The plan says mental illness is undefined under Patterson. It says if you can t tell whether the anxiety and depression is caused by the physical or vice versa, then the claimant gets the benefit of the doubt, and they get paid. That s exactly what Patterson says. So if the Social Security Administration is correct, and I believe they are, and I certainly think you believe they are because they paid Janix to get that ruling for them, then she should prevail, and I have 46 seconds. Thank you. Thank you. Good morning. May it please the Court. My name is Christina Holmstrom. I represent First Unum as well as Discover. I m going to briefly touch upon the issues that were just discussed, but we didn t even get to the counterclaims in Mr. Kelgle s argument, so I want to make sure I talk about that as well. Briefly, Judge Bolton absolutely did review the administrative record and decide this case under the procedure set forth in Kearney v. Standard. She clearly made credibility determinations and looked at the disputed issues of fact and resolved them in Unum s favor. And under Kearney as well as under Muniz, that means that this Court reviews her decision for clear error. But was the plaintiff on notice that it was going to be reviewed under a summary judgment standard because the judge herself had, I think, told Unum to refile? That s not entirely correct, Your Honor. The plaintiff filed a motion for summary judgment citing the summary judgment standards. Right. Unum filed a Rule 52 motion that did not cite the summary judgment standards and it was set forth as we do under the Kearney procedure. Didn t the judge order you to refile? Only because of the page limit violations. Okay. It was the way I interpret her order was that we had to refile because of the page limit violations. And then with respect to our counterclaims, which we had stipulated would also be decided under Rule 52, she was only going to consider that part of our motion under Rule 56. She never said she was going to consider the benefits claim first under Rule 56. It s really unusual in an ERISA case that you don t have disputed issues of fact in an administrative record. Right. And it would be an immense waste of judicial resources to require us to jump through a Rule 56 motion before we can get to the merits. Judge Bolton spent several pages going through the evidence in the administrative record and finding in Unum s favor. She expressly made credibility determinations and we asked her to do that in our motion. So plaintiff absolutely was on notice that that s what we were asking for. We made it clear as well in the opposition to the motion to strike. And plaintiff had every opportunity both to respond to our motion and to supplement that response when it became clear that we were arguing under Rule 52 in Kearney that we were entitled to judgment, not summary judgment. Judge Bartle, you had mentioned that the court did not that Judge Bolton didn t consider the Social Security Administration s decision in reviewing the record. That s because it wasn t in the record. Kearney is clear that even in a de novo case, the court is generally limited to the administrative record unless exceptional circumstances exist to supplement it. But that was not called to her attention then? I m sorry? The Social Security ruling was not called to her attention? It was submitted with the papers. It was not in the administrative record. It was certainly relevant to our counterclaims, but the Social Security s rationale was not part of the administrative record because it was never submitted during the claim because it happened after the claim was terminated. In other words, it never was submitted to the administrator for review. Is that what you re saying? That s absolutely correct, Your Honor. And the claimant could have submitted that, I take it? She could not have because the administrative record was closed by the time she was approved for Social Security benefits. Oh, that came after? Correct. I see. And in a de novo case, Judge Bolton has discretion as to whether or not to consider extra record evidence. Typically what happens if there is extra record evidence that the plaintiff wants to submit, they file a motion to supplement the record. And did the plaintiff never did that in this case? They did not do that here. Judge Bolton mentioned the Social Security decision when ruling on our counterclaims. But did not consider it as part of her order on the administrative record. And under Kearney, what the district court judge does with respect to admitting extra record evidence is reviewed for an abusive discretion. And I ve seen nothing to indicate that it was an abusive discretion for Judge Bolton not to consider the Social Security decision that was not actually provided to Unum during the claim process. Unless the court has any further questions on the administrative record and the decision on the benefits, I'd like to jump to the counterclaims because there's a lot there. This case has had a very long history due largely to the counterclaims. Since this lawsuit was filed in 2007, the law has rapidly evolved on what avenues a claim administrator can pursue to recover an overpayment. We had initially alleged an equitable lien by agreement. This court decided we couldn't do that without showing that the money was still in Ms. Bilyeu's possession. The Supreme Court later agreed with that as to equitable liens by agreement in a case called Montanil. Why doesn't that control the case, Montanil? Why doesn't that control the situation? It dealt with equitable liens by agreement. It did not deal with money had and received, nor did it deal with ill-gotten gains, both of which we've alleged in this case. Of course, if you look at that opinion, it really says if there's a specific pot of money that can be attached, that's one thing. But if you're just trying to get at assets of an individual, that's a legal claim. That's a legal restitution claim and not equitable. And isn't that what we have here? She spent the money. She didn't have it all tucked away in a trust account or a bank account. Sure, and I will acknowledge that representing claim administrators in this area, it's like threading the eye of a needle to try and recover Social Security overpayments and that eye keeps getting more narrow. But our specific claims haven't been ruled on. And I think there's a distinction to be made between the money had and received claim, which is to recover the $36,000 overpayment due to the Social Security payment, and the ill-gotten gains claim. I'm going to start with ill-gotten gains because I think there's actually very good support that we don't need to show that that money is still in her possession to recover. It goes all the way back to Mertens, when Judge Scalia used ill-gotten gains as an example of when money could be recovered as appropriate equitable relief under ERISA's statutory scheme. Nothing about Montanil or its predecessors contradicts that. And, in fact, we cited to a few different cases in our briefing where courts have specifically held that when you're talking about an ill-gotten gains theory, when a claim administrator has been actively and deliberately misled, that you don't have to show the money was still in the possession of the plaintiff to recover it. So that is a $61,000 claim that we've alleged. And if the court sides with us on that and finds that Judge Bolton was clearly erroneous in not siding with us on that, then the money had and received claim goes away. Now, as to the money had and received claim, I agree with you that Montanil does have some very sweeping statements in it. But Montanil specifically dealt with equitable liens by agreement. And if the court is going to interpret that to mean any time a claim administrator is trying to seek money that the claimant has already spent but admittedly owes, it really implicates some of the concerns raised in the dissents in Montanil and also in Knudsen. Both of those cases had very strong dissents, talking about the bizarre result that happens when you don't allow claim administrators to recover and you have a claimant who is basically incentivized to go spend that money as quick as they can so that it cannot be recovered. But Congress could solve that problem by just changing, eliminating the word equitable. Congress could, but in the Knudsen dissent, which acknowledge is a dissent, not the... And I think the dissent was concerned about the word equitable. The dissent, in effect, said, well, equitable really doesn't mean equitable. It's inequitable to interpret the statute the way it's written. And that's unfortunate, but that seems to be what it means. I do wish that Congress would make that a little bit more clear, but I'm left with what we have. And it's not totally clear that money had and received is so similar to equitable lien by agreement that we can't pursue it here. Money had and received has been described by the United States Supreme Court back in the day of the divided bench as equitable in both origin and function. And that is, we cited the case in our brief, that is the Atlanta Coast Rail Company versus the state of Florida. And this was part of the concern that was raised in the Knudsen dissent. When you're trying to go back and recreate what was within the province of equity versus the province of law, you're talking about very archaic principles that are difficult. I think in that Atlantic case, I read it some time ago, but they didn't talk about, there wasn't a specific fund there, I don't think, either. In the Atlantic Coastline case you're talking about? It is. Yeah. Yeah, I think Your Honor is correct. It's a very different fact pattern from what we have here, which is why we didn't argue the facts more. Right. But that's absolutely right. And I think what is significant, though, is back in 1935, you have the United States Supreme Court saying it is both equitable in function and origin. And that comes very close to the language used in Montanil that in order to recover under ERISA, it has to be equitable in, I think, origin and remedy. So I think money had and received is a different sort of claim than just an equitable lien by agreement in that it does have its genesis in the courts of equity. And unless the Court has any additional questions for me, I'm going to sit down with my 15 seconds. Thank you, Ms. Ahlstrom. Mr. Colville, you have some time remaining. The Atlantic Coastline case says a cause of action for restitution is a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function. What's equitable in origin and function is restitution, not money had and received. And Montanil covers that. If all they're seeking is restitution, she still has to have the money. She doesn't. The district court treated their motion at all times as a sermon judgment motion. That's in ER 167. That's the original order on the motion to strike. And it's in footnote number one of ER 178. The Social Security decision is in the record. It's ER 99.99-1. And the judge discusses it in her ruling on sermon judgment. There's a disconnect here between their claim for the overpayment, which depends on the Social Security Administration being correct. They're saying she's disabled under the Social Security, and we paid for disability, so we get the overpayment. And then they come on the ill-gotten gains as she was never disabled. That inconsistency has driven me crazy. Either she's disabled or she's not. You have to choose. You can't be arguing for both of those forms of relief at the same time. They're mutually exclusive. And I'm out of time. Thank you. Okay. Thank you. We thank counsel for the argument. Liu versus Morgan Stanley is submitted. With that, we've completed the oral argument calendar for the day, and the court stands adjourned. All rise.
judges: Fisher, Bybee, Bartle